## WILLIAMS v. HAYS.

(Supreme Court, Appellate Division, First Department. March 6, 1896.)

1. LIABILITY FOR NEGLIGENCE—INSANITY AS A DEFENSE.
    Where a vessel in the exclusive control of one of the joint owners, who has chartered it, is lost through his negligence, he cannot defend an action by the other owners by showing that his want of care was due to temporary insanity, though such insanity was caused by his efforts to save the vessel.

2. BEST AND SECONDARY EVIDENCE.
    Parol evidence of a contract will not be excluded on the ground that it is not the best evidence, where the only testimony as to the existence of any writing is that of the party objecting, who fails to produce the same, though within his power, or to show that it contains all the terms of the agreement.

Appeal from trial term, New York county.

Action by Paul Williams against William Hays to recover for the loss of a brig through the alleged negligence of defendant. From a judgment for plaintiff, entered on the verdict of a jury under direction of the court, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

William W. Goodrich, for appellant.

George A. Black, for respondent.

INGRAHAM, J. This case presents questions about which there has been quite a conflict of judicial opinion. The main question, however, has been settled by the court of appeals on a former appeal to that court. See 143 N. Y. 442, 38 N. E. 449. The evidence appears to have been substantially the same upon the last trial as it was when the case was before the court of appeals, and by the judgment there but one question was left open, and that was whether or not the defendant would be liable if he had become insane solely in consequence of his efforts to save the vessel during the voyage; the court saying:

"We would have a different case to deal with. He was not responsible for the storm; and while it was raging his efforts to save the vessel were tireless and unceasing, and, if he thus became mentally and physically incompetent to give the vessel any further care, it might be claimed that his want of care ought not to be attributed to him as a fault."

Upon this question we agree with the judge below,—that it could make no possible difference as affecting the liability of the defendant, applying the principles stated by the court of appeals, how he became insane, or what caused the disease or mental condition that prevented him from exercising the care or skill that he was bound to exercise. The court of appeals held that upon the evidence the defendant was to have the absolute control and management of the vessel, and became her owner pro hac vice; and, this relation existing, the defendant was responsible to his co-owners for any want of care or skill in the management of his vessel which caused the loss of the vessel.

On this trial the plaintiff, under a stipulation which allowed either party to read any of the testimony taken upon the former trial of the action, but against objection and exception of the defendant, read the testimony of the defendant given upon the former trial, in which he testified as to the contract under which he managed the vessel, and upon which evidence the court of appeals based its judgment. That evidence was objected to on the ground that the complaint alleged the relations that existed between the defendant and his co-owners, the allegations of which were admitted by the answer. It is quite true that the complaint alleges that the defendant was part owner and master of the brig Sheldon, that at the time of the loss and stranding of the brig the vessel was under the command of the defendant as master, and that such loss and stranding were caused wholly by the negligence, carelessness, misconduct, and improper navigation of the defendant as master; and the answer admits that the defendant was part owner

and master of the brig, admits that the brig became a total loss, but denies that the said wreck or loss was occasioned by his negligence as master. We do not feel justified, however, in reversing this judgment because of the admission of that testimony, as the pleadings were before the court on the former appeal, and, notwithstanding these allegations and admissions, the court held that the defendant was not master, but stood in the relation of charterer. It must therefore have determined that it was competent for the court to take evidence as to the relation that did actually exist between the defendant and his co-owners, and hold him to the responsibility that such relation created, irrespective of the allegations in the pleadings. The court then, after determining the re-. lation that existed between the defendant and his co-owners, discussed the question as to the defendant's liability to them, and what effect his sudden insanity would have upon his liability for a neglect to perform the duty that he owed to his co-owners, and expressly determined that his insanity would be no answer to an action against him based upon his neglect to perform such duty. After an examination of the authorities, the court states the result as follows:    •

"This vessel was intrusted to the defendant, not as agent, but, as to the other owners, as charterer, lessee, or bailee; and if he caused her destruction by what in sane persons would be called willful or negligent conduct, the law holds him responsible. The misfortune must fall upon him, and not upon the other owners of the vessel."

At the conclusion of the opinion the learned judge says:

"To uphold this judgment, we must ingraft upon the general rule the exception or qualification that he is not liable for his negligent tort. If the defendant had taken a torch, and fired the vessel, he would have been liable for her destruction, although his act was unconscious, and accompanied by no free will. But if he had negligently fired the vessel, and thus destroyed her, being incapable from his mental infirmity from exercising any care, the claim must be that he would not be liable. Such a distinction is not hinted at in any authority, has no foundation whatever in principle or reason, and cannot stand with authorities I have before cited."

The principle upon which the defendant's liability was placed, as expressly stated by the court, is that, where one of two innocent parties suffer, the loss must fall on the one whose acts cause the injury, rather than upon the one who had no hand in it. And this principle is here applied to a case where a person was injured, not by the direct acts of another, but by that other's failing to exercise the care and skill which he was bound to exercise in consequence of a contract or duty that he had assumed to perform. As was illustrated by the learned judge in his opinion:

"If the defendant had taken a torch, and fired the vessel, he would have been liable for her destruction, although his act was unconscious, and accompanied by no free will. But if he had negligently fired the vessel, and thus destroyed her, being incapable, from his mental infirmity, from exercising any care, the claim must be that he would not be liable."

And to extend the analogy somewhat further, if he, being in charge of the vessel, being bound to exercise due care and skill to protect her, had known that she was on fire, but had not ex-

tinguished it, he would still be liable for a failure to extinguish it, although prevented by insanity or any other disease from either appreciating the danger or moving so as to be able to extinguish it. That is substantially the position here. This vessel was near the shore, unmanageable in consequence of an accident to her rudder, and she drifted ashore, and was lost, and the defendant is held responsible because he did not take measures to prevent that accident, which it is apparent that any person in the possession of his faculties would have taken. The court expressly held that it was entirely immaterial, so far as this defendant's liability was concerned, whether the duty was that imposed upon him by law or arose from the contractual relation that existed between the defendant and his co-owners, the court saying that, if the obligation of the defendant to take good care of the vessel while she was in his possession under his contract was an obligation springing out of his contract, and thus a contract obligation, "such a view of the case would not aid him. He was sane when he entered into the contract, and his subsequent insanity would furnish no defense in an action for the breach of the contract."

It has thus been authoritatively determined that the defendant was liable to his co-owners for his neglect or want of skill in allowing this vessel to be lost, and whether or not the insanity under which he claims to have been suffering was occasioned by his efforts to save the vessel during the storm which immediately preceded its loss would make no difference as to his liability. It seems to us clear that if an insane captain is bound to use the same care and skill in the management of his ship that a sane captain is bound to use, and is liable if he fails to exercise such care and skill, upon the principle that where one of two innocent parties must suffer the loss must fall on the one whose acts caused the injury, regardless of his intention or ability to perform his obligation in consequence of disease, the cause of such disease or insanity becomes entirely immaterial, provided that it is not caused by his voluntary act. Upon what principle can an unfortunate individual, suddenly afflicted with a disease, either mental or physical, which prevented him from exercising any of his faculties, be said to be at fault? The liability is expressly placed upon the ground that he is not at fault, but is one of two innocent parties upon whom the loss must fall. If this principle applies at all to such a case as this, it must apply, we think, to throw the responsibility upon the one whose failure to act has caused the injury, irrespective of the condition that caused failure to act. It is true that in determining what duty a person assumes when placed in a position like that of the defendant it has been usually assumed that the parties contracted in relation to the limitations under which all human beings exist. All are liable to sudden attacks of disease which for a longer or shorter time incapacitate a person from doing any labor or performing any duty. And if a person is thus rendered, by what has been called "an act of God," incapable of work, his failure to work is not actionable. But it is here held that such a condition does not excuse a person from

liability for an injury which was caused by his neglect when suffering from insanity which prevented him from performing the duties and obligations which he had assumed, and upon the ground that the injury having to fall upon either the captain or his co-owners, and it having resulted from the captain's failure to do his duty, he, rather than the co-owners, must suffer. The rule applying, it can be no defense to him to say that the incapacity was caused by a disease brought on by his former efforts to navigate the vessel, or to perform the duties that he assumed when he took command of the vessel. He was bound to exercise care and skill in the navigation of the vessel, and whether the disease that caused the insanity was brought on by an attack of malaria, together with the remedies that he took for it, or was brought on by the exposure in navigating the vessel, together with the remedies that he took for the condition caused by such exposure, is clearly immaterial. In one case, as in the other; it was his neglecting to do what he was bound to do that caused the loss, and he, rather than his co-owners, who neglected no duty, the court of appeals has held must be responsible. We think, therefore, that the judge below was right in holding that, applying the judgment of the court of appeals in this case, the defendant was liable, irrespective of what it was that caused his condition which prevented him from exercising care and skill in the navigation of this vessel when such negligence caused her loss.

We do not think that it was error for the court to refuse to strike out the evidence of the captain as to his relation to his co-owners, on the ground that the contract between the defendant and such co-owners was in writing, and that the writing was the best evidence. The only evidence of the existence of the writing was that of the captain when he said that a letter had been written after an interview with the agent of the other owners, but it did not appear that such letter contained the contract between the parties, or that all of the terms of the agreement under which the defendant navigated the vessel were contained in it. It was within the defendant's power to produce the letter, and, if he had wished to exclude the parol evidence of the arrangement under which he sold the vessel, it was his duty to show clearly that the whole contract between the parties was in writing.

Upon the whole case, we think the trial judge correctly applied the judgment of the court of appeals, and that no error was committed that would justify us in reversing the judgment. The judgment is therefore affirmed, with costs. All concur.